UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULBASIR RAMAZANOV, A-220-840-093,<br><br>            Petitioner,<br><br>    v.<br><br>PAM BONDI, et al.,<br><br>            Respondents. | No.  1:26-cv-1311 DC AC<br><br><br>ORDER AND AMENDED FINDINGS AND<br>RECOMMENDATIONS |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The undersigned issued findings and recommendations on April 6, 2026 (ECF No. 9), to which respondents have objected (ECF No. 10).  After the objections period passed, respondents also submitted an exhibit "to provide further insight into the reasons that they re-detained Petitioner without a hearing" and state "[i]t was not provided earlier because it had to go through a use authorization process before release."  ECF No. 11.  In light of respondents' filings, the April 6, 2026 findings and recommendations are amended to add Section V below, which addresses the objections and late-filed exhibit.

I.      Factual Background

Petitioner is a citizen of Russia and entered the United States on December 28, 2021, and made a request for asylum.  ECF No. at 1 at 2, 9; ECF No. 8-1 at 3, 45.  At that time, he was

////

1

detained and charged as removable under 8 U.S.C. § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I).[1]  ECF No. 1 at 9.  On January 1, 2022, petitioner was issued a Notice and Order of Expedited Removal and appears to have been referred for a credible fear interview.  ECF No. 8-1 at 38-39, 45.  On January 14, 2022, petitioner was paroled from immigration custody.  ECF No. 8-1 at 3.  It is unclear whether a credible fear interview took place prior to his release, and it does not appear that he was issued a Notice to Appear at that time.  ECF No. 1 at 9.

While out of custody, petitioner submitted an asylum application, and he was issued a work permit after the application was accepted.  Id.  On November 17 or 18, 2025,[2] petitioner had a credible fear interview with negative results.  ECF No. 1 at 9-10; ECF No. 8-1 at 36-37.  Petitioner's asylum application was then terminated and he was detained.  ECF No. 1 at 10.  When he asked why he was being detained, petitioner was told that it was because he had broken the law by entering the United States illegally.  Id.  Petitioner asserts that aside from his initial entry into the country, he "has never violated the law and has complied with all orders of the Courts and government agencies of the United States."  Id.

On December 22, 2025, an immigration judge found that petitioner had a significant possibility of eligibility for asylum and vacated the negative credible fear finding.  ECF No. 8-2 at 1-2.  Petitioner was issued a Notice to Appear stating that he was an arriving alien who was not admitted or paroled and did not have valid entry documents.  Id. at 3.  On January 26, 2026, petitioner had a custody redetermination hearing where his request for a change in custody status was denied on the ground that the immigration judge did not have jurisdiction to consider bond because petitioner was an arriving alien.  Id. at 9-10.

II.    Procedural History

On February 13, 2026, petitioner filed his petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by the Department of Homeland Security (DHS).  ECF

---

[1]  For consistency, the undersigned will cite to the applicable United States Code sections throughout without reference to the corresponding section of the Immigration and Nationality Act.

[2]  Petitioner asserts that the interview and his detention took place on November 18 (ECF No. 1 at 9-10), while respondents' records indicate the interview and detention occurred on November 17 (ECF No. 8-1 at 20).  The difference in date is immaterial to resolution of the petition.

2

No. 1.  The petition asserts that petitioner's arrest and re-detention without a hearing violates due process, the Immigration and Nationality Act, the Administrative Procedures Act, and his Fourth Amendment right against unreasonable seizure.  Id. at 16-20.  Specifically, petitioner argues that his re-detention violates § 1225(b) because the statute does not authorize re-detention without a material change in circumstances and the re-detention policy is arbitrary and capricious.  Id. at 16-18.  He further argues that his re-detention violates both substantive and procedural due process because his re-detention does not serve any legitimate purpose, and he has been deprived his liberty without notice and a hearing.  Id. at 18-19.  Finally, petitioner argues that his arrest and re-detainment constitute an unreasonable seizure and therefore violate the Fourth Amendment.  Id. at 19-20.  Respondents oppose the petition, arguing that petitioner's rights have not been violated because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and such detention is constitutional; he was granted only temporary parole, which did not create a protected liberty interest; and his parole was properly terminated in accordance with the regulations.  ECF No. 6.

III.   Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

IV.   Discussion

A.   Statutory Framework

Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily detain "an applicant for admission."  Section 1225(a)(1) defines "an applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought

to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded. Id. Despite mandatory detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)). The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released." Id. at 300. Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97. By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288). It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

B.    Due Process

In this case, there is some ambiguity as to the authority under which petitioner was released on parole. Petitioner asserts that he was released on his own recognizance (ECF No. 1 at 18), which would indicate release on conditional parole under 8 U.S.C. § 1226(a), see Ortega-Cervantes v. Gonzalez, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)"). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the

4

outset of detention." Jennings, 583 U.S. at 306 (citations omitted). Respondents, on the other hand, argue that he was released on temporary parole under 8 U.S.C. § 1182(d)(5). ECF No. 8 at 4. Parole under § 1182(d)(5)(A) is limited to "urgent humanitarian reasons or significant public benefit." Jennings, 583 U.S. at 288 (citations omitted). Neither party provides copies of petitioner's release documents to support their claim. However, it is unnecessary for the undersigned to resolve which statute petitioner was paroled under because, as outlined below, petitioner was entitled to a pre-deprivation bond hearing prior to being detained regardless of the statute under which he was paroled.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

"Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." Omer G.G. v. Kaiser, No. 1:25-cv-1471 KES SAB, __ F. Supp. 3d __, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "[A] substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections." D.L.C. v. Wofford, No. 1:25-cv-1996 DC JDP, 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) (collecting cases); Flores v. Chestnut, No. 1:26-cv-0078 TLN CSK, 2026 WL 504650, at *4 (E.D. Cal. Feb. 24, 2026) (court did not need to determine whether petitioner was detained under § 1225 or § 1226 because she "had a protected liberty interest in her release, regardless of which detention statute applies." (collecting cases)).

5

> Specifically, this court has found that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered.

Cesar Luis v. Warden, No. 1:26-cv-1823 DC SCR, 2026 WL 700713, at *1 (E.D. Cal. March 12, 2026) (collecting cases). By initially releasing petitioner on parole, the government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and there is no evidence that there was a change in this assessment. By permitting petitioner to remain at liberty for nearly four years, the government enabled petitioner to develop a protected liberty interest in remaining out of custody.

For these reasons, the undersigned finds that petitioner has established a liberty interest in his continued release. Having determined that a liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention. Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner was out of custody for nearly four years prior to his

6

re-detention, which has separated him from his child, home, community, and job.  ECF No. 1 at 13.  He asserts, and respondents do not dispute, that he has no criminal record, there is no basis to believe he is a safety or flight risk, and he has complied with all orders.  Id. at 10, 13.  This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been detained for over four months without being provided a substantive bond hearing,[3] the risk of erroneous deprivation is high.  See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).  Respondents do not argue that petitioner is a flight risk or danger to public safety, and no neutral arbiter has made such a determination.

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost."  R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty and respondents were required to provide him with a pre-deprivation hearing prior to revoking his parole.  Respondents point to no reasons why a pre-deprivation hearing could not be held, and provide no evidence of "urgent concerns," warranting petitioner's re-detention without a hearing, thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (finding

---

[3]  Petitioner's request for custody redetermination was denied on the ground that the immigration judge lacked jurisdiction.  ECF No. 8-2 at 9-10.

no urgency where ICE waited over six weeks after petitioner's arrest by local law enforcement to arrest and re-detain petitioner).

The court finds relief is appropriate on petitioner's claim that his re-detention without a pre-deprivation hearing to determine wither he is a flight risk or danger to the community violates his procedural due process rights.  The court therefore declines to address petitioner's other grounds for relief which all challenge his re-detention and seek the same or similar relief (*i.e.*, petitioner's immediate release).

V.    Respondents' Objections

In addition to re-iterating the arguments set forth in their answer, respondents newly argue that petitioner was a flight risk because he had a negative credible fear determination and therefore "no longer had an incentive to appear for future hearings."  ECF No. 10 at 2.  However, petitioner exercised his right to have the credible fear determination reviewed by an immigration judge, which indicates that he did intend to continue appearing at future hearings (ECF No. 8-1 at 10).  And nothing in respondents' answer or in the evidence submitted indicates that a risk of flight risk related to the negative determination was actually factored into the decision to re-detain him.

Respondents have also submitted an exhibit—outside the time for filing objections—"to provide further insight" into why petitioner was re-detained without a hearing.  ECF No. 11 at 1. They state that they did not provide the information sooner because they had to get authorization to release the information (id.), but there is no indication in either respondents' answer or their objections that they knew this information existed and were in the process of getting authorization to provide it.

The exhibit states that the United States government has information that petitioner's phone number was found in the device of an overseas-based supporter of a terrorist organization. Id. at 2.  However, while it appears respondents are attempting to argue that this information constituted "urgent concerns" warranting detention without a pre-deprivation hearing, they provide no details regarding when the government came into possession of this information. Nothing indicates whether respondents were in possession of this information when petitioner

was originally paroled, or whether they received it at some point in time after the initial decision to parole him. If respondents were in possession of this information at the time of petitioner's initial release on parole, it would indicate that the information had already been considered in determining whether petitioner was a safety risk. Even if the court assumes the information was discovered after the initial parole decision, if sufficient time passed between respondents' receipt of the information and petitioner's re-detention without action by respondents, or the information was received sometime after his re-detention, it would not have any bearing on the claim of "urgent concerns."

Moreover, the exhibits produced in support of respondents' answer indicate that this information was not a consideration in his re-detention. The record of petitioner's credible fear determination, which took place the day he was detained, indicates that he did not appear to be subject to any bars to asylum or withholding of removal, which include "security risk" and "terrorist" (ECF No. 8-1 at 18-19). Finally, the mere presence of petitioner's phone number in the unspecified device of an overseas terrorist organization supporter, without any further explanation or context, fails to demonstrate that his detention without notice was warranted.

In sum, respondents now attempt to show exigent circumstances warranting petitioner's detention without pre-deprivation due process but fail to establish this circumstance newly arose at or near the time of re-detention. Therefore, at the time of petitioner's re-detention, respondents violated petitioner's due process rights, as set forth above, and the recommendation for immediate release stands.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the April 6, 2026 findings and recommendations (ECF No. 9) are AMENDED and SUPERSEDED by the instant findings and recommendations.

IT IS FURTHER RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED, as follows:

    a. Respondents shall IMMEDIATELY RELEASE petitioner Abdulbasir Ramazanov, A-220-840-093, with the same conditions he was subject to

9

immediately prior to his detention on November 17, 2025.  At the time of release, respondents must return all of petitioner's documents and possessions.

b.  Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

c.  Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide at least 7 days' notice to petitioner and hold a pre-deprivation bond hearing before a neutral arbiter, at which petitioner's eligibility for bond must be considered.

d.  The order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

2.  Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his November 17, 2025 detention.

3.  The Clerk of the Court is directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **three** days after service of the

////

////

10

objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 6, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11